IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| LIFESTAR AMBULANCE SERVICE, INC., a Georgia Corporation, individually and on behalf of a class of all entities similarly situated; COASTAL MEDICAL TRANSPORT, INC., a North Carolina Corporation, individually and on behalf of a class of all entities similarly situated; AMBULANCE SERVICES, INC., a Tennessee Corporation, individually and on behalf of a class of all entities similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; THE DEPARTMENT OF HEALTH AND HUMAN SERVICES and MICHAEL LEAVITT in his official capacity as Secretary/Director of D.H.H.S.; THE HEALTH CARE FINANCING ADMINISTRATION (CENTERS FOR MEDICARE & MEDICAID SERVICES); and LESLIE V. NORWALK in her official capacity as Secretary/Administrator of H.C.F.A./C.M.S.<br><br>Defendants. | CIVIL ACTION FILE NO.:<br>4:07-CV-89 (CDL) |

## AMENDED COMPLAINT

COME NOW Plaintiffs, by and through counsel, and file this Complaint against the above-named Defendants, showing the Court the following:

1.  Plaintiffs Lifestar Ambulance Service, Inc. ("Lifestar"), Coastal Medical Transport ("Coastal") and Ambulance Services, Inc. ("ASI"), on behalf of itself and the class it seeks to represent, hereby files this lawsuit seeking mandamus relief pursuant to 28 U.S.C. § 1361.

## PARTIES, JURISDICTION, AND VENUE

2.  Subject matter jurisdiction is conferred by 28 U.S.C. §1331 because this action is based on a question of federal law.

−1−

3. Subject matter jurisdiction is conferred by 28 U.S.C. §1346 because the United States is a defendant in this action.

4. Subject matter jurisdiction is conferred by 28 U.S.C. §1361 because the relief requested seeks for this Court to compel defendant-officers of the United States, and/or an agency thereof, to perform their duties under federal law.

5. Subject matter jurisdiction is conferred by 42 U.S.C. § 405 because the Court has the limited ability to review the final administrative decision relating to Plaintiff Lifestar's administrative appeal.

6. Venue is proper in this District Court pursuant to 28 U.S.C. §1391 because some of the events giving rise to this cause of action occurred in this jurisdiction.

7. Venue is proper pursuant to 28 U.S.C. §1402 because the United States is a defendant in this action and the named Plaintiff, Lifestar Ambulance Service, Inc., is a resident of this jurisdiction.

8. Venue is proper pursuant to 42 U.S.C. § 405(g) because Plaintiff Lifestar has its principal place of business within this judicial district.

9. Plaintiff Lifestar is a Georgia ambulance service corporation that provided transportation of patients within the State of Georgia during all relevant time periods referenced in this Complaint. Its principal place of business is located at 4422 Miller Road, Columbus, Georgia 31909.

10. At all pertinent times, Plaintiff Lifestar received payments from government insurance programs, including Medicare.

11. Plaintiff Coastal is a North Carolina ambulance service corporation that provided transportation of patients within the State of North Carolina during all relevant time periods

referenced in this Complaint. Its principal place of business is located at 101 South Granville Street, Windsor, North Carolina 27983.

12.     At all pertinent times, Plaintiff Coastal received payments from governmental insurance programs, including Medicare.

13.     Plaintiff ASI is a Tennessee ambulance service corporation that provided transportation of patients within the State of Tennessee during all relevant time periods referenced in this Complaint. Its principal place of business is located at 112 W. Main St., Waverly, Tennessee 37185.

14.     At all pertinent times, ASI received payments from government insurance programs, including Medicare.

15.     Defendant United States of America ("USA") is the Federal Government of the United States, is the main defendant party in interest pursuant to Federal law, and is ultimately responsible for upholding and adhering to the laws as enacted by the United States Congress.

16.     Defendant Department of Health and Human Services ("DHHS") is the department of the United States that administers Federal law, policy, and budget for health, welfare, and income security plans.

17.     Defendant Michael Leavitt is the current Secretary of DHHS and is personally responsible in his official capacity for seeing that DHHS and the divisions under its control administer the programs for which they are responsible in compliance with Federal law.

18.     Defendant Health Care Financing Administration (now known as Centers for Medicare & Medicaid Services ("CMS")), is the branch/administrative division of DHHS responsible for carrying out federal laws regarding, among other things, the administration of

the Medicare and Medicaid programs.

19. Defendant Leslie V. Norwalk is the current Secretary/Administrator of CMS and is personally responsible in her official capacity for seeing that CMS administers the programs for which it is responsible in compliance with Federal laws.

## OPERATIVE FACTS

20. Traditionally, Medicare paid for ambulance services furnished by suppliers on a "reasonable charge" basis.

21. Under the "reasonable charge" methodology, different billing and payment methods were in use in different localities.

22. In 1997, Congress mandated the establishment of a "national" ambulance fee schedule for ambulance services to be paid for under Medicare. *See* The Balanced Budget Act of 1997 ("1997 BBA"), Public Law 105-33, §4541 (a)(2), *codified at* 42 U.S.C. §1395m(1).

23. In enacting the 1997 BBA, Congress explicitly provided that the fee schedule adopted by DHHS "shall apply to services furnished on or after January 1, 2000".

24. In enacting the 1997 BBA, Congress left no room for Defendants to exercise discretion in altering the effective date of this provision.

25. Defendants did not create or implement a fee schedule pursuant to the 1997 BBA until February 27, 2002 ("2002 Fee Schedule").

26. The 2002 Fee Schedule was only effective for services furnished after April 1, 2002.

27. Defendants have failed and continue to fail to publish or implement a fee schedule

under the 1997 BBA to cover the payment of Medicare qualified services rendered between January 1, 2000 and March 31, 2002.

28. Defendants' failure to publish or implement a fee schedule for Medicare qualified services rendered between January 1, 2000 and March 31, 2002 is without statutory or other authority and has harmed Plaintiffs and class members as set forth below.

29. Effective July 1, 2001, Congress unequivocally required Defendants to start compensating certain ambulance suppliers that had previously not received mileage payments for miles traveled in their home county. *See* The Benefits Improvement and Protection Act of 2000 ("2000 BIPA"), *codified at* 42 U.S.C. § 1395m(l)(2)(E).

30. The 2000 BIPA expressly provided that such mileage compensation was to apply to services furnished on or after July 1, 2001.

31. In enacting the 2000 BIPA, Congress left no room for Defendants to exercise discretion in altering the effective date of this provision.

32. Defendants' 2002 Fee Schedule applied only to compensate mileage for services furnished on or after April 1, 2002.

33. Defendants have failed and continue to fail to publish or implement a fee schedule under BIPA 2000 to compensate mileage for services rendered between July 1, 2001 and March 31, 2002.

34. Plaintiffs seek injunctive relief requiring Defendants to implement a fee schedule for services rendered between January 1, 2000 and March 31, 2002 in compliance with the 1997 BBA and mileage provisions for services rendered between July 1, 2001 and March 31, 2002 in compliance with the 2000 BIPA ("the Relevant Time Periods").

35. During the Relevant Time Periods (and from that time forward), Plaintiffs have

provided services that should have been compensated according to the fee schedule mandated by the 1997 BBA or the mileage provisions mandated by the 2000 BIPA. Said failure to timely implement and/or make effective the fee schedule as required by federal law through statutory enactment has damaged Plaintiffs as set forth below.

36. The named Plaintiffs and the class of others similarly situated all were ambulance companies during the Relevant Time Periods.

37. The named Plaintiffs and the class of others similarly situated were eligible to participate in the Medicare program during the Relevant Time Periods and accepted Medicare payments.

38. The named Plaintiffs and the class of others similarly situated provided eligible services to Medicare patients during the Relevant Time Periods.

39. The named Plaintiffs and the class of others similarly situated have made claims that should have been paid under the 1997 BBA and the 2000 BIPA for services rendered during the Relevant Time Periods if Defendants had not failed to publish or implement fee schedules or mileage provisions as mandated by the 1997 BBA and the 2000 BIPA.

40. The named Plaintiffs and the class of others similarly situated have been paid for the services rendered during the Relevant Time Periods at a lower rate than what Congress mandated in the 1997 BBA and the 2000 BIPA.

41. The named Plaintiffs and the class of other similarly situated are entitled to the difference between the amount they received and the amount that they should have received if Defendants had abided by the 1997 BBA and the 2000 BIPA as incidental damages flowing from Plaintiffs' requested mandamus relief.

## LIABILITY OF DEFENDANTS

42. Defendants have failed to comply with the 1997 BBA by not publishing or implementing a fee schedule for services rendered between January 1, 2000 and March 31, 2002.

43. Defendants have failed to comply with the 2000 BIPA by not publishing mileage provisions for services rendered between July 1, 2001 and March 31, 2002.

44. Congress enacted the 1997 BBA and the 2000 BIPA pursuant to the method established in the Constitution of the United States of America.

45. Congress has appropriated funds from the U.S. Budget and has apportioned said funds to DHHS and/or CMS to implement said laws.

46. Defendants have actual and constructive notice of the 1997 BBA and the 2000 BIPA.

47. Defendants have the responsibility and authority to implement the unequivocal terms of the 1997 BBA and the 2000 BIPA.

## ADMINISTRATIVE ACTIONS

48. On August 15, 2002, Plaintiffs filed a class action against Defendants seeking, among other things, mandamus relief requiring Defendants to adopt and apply a fee schedule that applies to services furnished during the BBA and BIPA Relevant Time Periods ("*Lifestar I*").

49. Because Plaintiffs' and the class members' cause of action does not arise under the Medicare Act but, rather, under the 1997 BBA and the 2000 BIPA, there was no requirement that Plaintiffs or class members exhaust administrative remedies under the BBA

of 1997 or the BIPA of 2000.

50.　Neither the 1997 BBA nor the 2000 BIPA precluded judicial review of Plaintiffs' or the class members' claims.

51.　Furthermore, for most of the dates of service at issue, the time for filing any administrative claims had expired before the right to challenge the claims arose; therefore there was no administrative process available and there was no way to bring these administrative claims in a timely manner.

52.　Until Defendants issued the illegal fee schedule in 2002, there was no way for Plaintiffs to file claims under a non-existent fee schedule that may or may not have granted the class members an increase.

53.　Until Defendants issued the illegal fee schedule in 2002, there was no way for Plaintiffs to know that the fee schedule Defendants ultimately implemented would not have been retroactively effective back to the date set by Congress

54.　On January 16, 2003, this Court granted Plaintiffs' motion for class certification and for summary judgment on their mandamus claim, ordering Defendants to comply with their obligations under the BBA and BIPA. The Court also denied Defendants' motion to dismiss Plaintiffs' mandamus claim for lack of jurisdiction over this claim.

55.　On April 16, 2004, the Eleventh Circuit held that this Court lacked jurisdiction to hear Plaintiffs' mandamus claims because Plaintiffs had failed to exhaust administrative remedies.

56.　This Court dismissed Plaintiffs' first Action ("*Lifestar I*") on February 2, 2005.

57.　Plaintiffs attempted to pursue their claims in the administrative process after receiving the Eleventh Circuit's opinion but before this Court dismissed *Lifestar I*.

58. Plaintiff Lifestar has now fully exhausted its administrative remedies as required by the Eleventh Circuit by pursuing and receiving a final administrative decision.

59. Plaintiffs Coastal and ASI have fully exhausted their administrative remedies as required by the Eleventh Circuit by virtue of the administrative process's refusal to act upon their repeated requests for administrative review.

60. As foreshadowed by this Court and shown below, Plaintiffs' claims cannot be remedied through the Medicare administrative process.

61. Contrary to the government's prior assertions before this Court and the Court of Appeals, the administrative process was not available to challenge the payment amount of the subject claims and there was also no mechanism in the administrative process to even address the issue of the illegal fee schedule effective date.

## PLAINTIFF LIFESTAR'S ADMINISTRATIVE APPEAL

62. On or around January 12, 2005, Plaintiff Lifestar submitted its administrative appeal on behalf of itself and other similarly situated suppliers to Cahaba, the relevant Medicare administrator in Georgia.

63. Plaintiff Lifestar's January 12, 2005 submitted request for redetermination of its claims was a valid appeal request.

64. Plaintiff Lifestar corresponded with Cahaba Medicare representatives at least 14 times over nearly nine months attempting to obtain a ruling on Lifestar's administrative appeal.

65. Cahaba asked Plaintiff Lifestar to submit information (names and dates of service) for every ambulance service furnished during the Relevant Time Periods.

66. However, Cahaba and/or CMS already possessed on its computer systems the

names and dates for every ambulance service Lifestar furnished during the Relevant Time Periods.

67. CMS admitted in its April 16, 2003 notice of proposed rulemaking that suppliers would not be required to submit any additional information to get paid according to a fee schedule during the Relevant Time Periods.

68. After corresponding with Cahaba regarding whether Lifestar should have to submit information that Cahaba and/or CMS already possessed, Lifestar submitted the names and dates of service for every ambulance trip at issue during the Relevant Time Periods by letter dated August 1, 2005.

69. Cahaba denied Lifestar's claims as untimely submitted on the grounds that Lifestar did not file its administrative claim until it submitted the requested information by letter dated August 1, 2005.

70. Ironically, an Excel spreadsheet from Cahaba's or CMS's computer systems containing detailed information about each and every Lifestar ambulance trip at issue during the relevant time frame was attached to Cahaba's letter of denial.

71. On November 9, 2005, Lifestar appealed Cahaba's denial of its claim to a Medicare Hearing Officer.

72. On January 30, 2006, the Medicare Hearing Officer determined Plaintiff Lifestar's administrative appeal of January 12, 2005 to be valid and timely submitted.

73. The Medicare Hearing Officer concluded that there was no remedy for Plaintiff Lifestar's claim via the administrative process.

74. The Medicare Hearing Officer concluded that the administrative appeals process was not relevant for Plaintiff Lifestar's claims.

75. On March 2, 2006, Plaintiff Lifestar appealed the Medicare Hearing Officer's decision to an Administrative Law Judge.

76. Plaintiff Lifestar appealed the Medicare Hearing Officer's decision in order to ensure that Plaintiff had exhausted all available administrative remedies.

77. On October 2, 2006, the Administrative Law Judge determined that there was no remedy for Plaintiff Lifestar's claim via the administrative process.

78. The ALJ concluded that "there is no jurisdictional authority in the instant forum to issue a decision mandating the implementation of, or payment based upon, an ambulance fee schedule in contravention of the applicable federal regulations."

79. On December 4, 2006, Plaintiff Lifestar appealed the ALJ's decision to the Medicare Appeals Council ("MAC").

80. Plaintiff Lifestar appealed the ALJ's decision in order to ensure that Plaintiff had exhausted all available administrative remedies.

81. Plaintiff Lifestar's appeal of the ALJ's decision involved multiple HIC numbers.

82. The MAC assigned Plaintiff Lifestar's Request for an Appeal the following Appeal No.: 1-28447151.

83. On March 26, 2007 the MAC determined that there was no regulatory basis for reviewing the ALJ's decision.

84. The MAC concluded that "[b]oth the ALJ and the Council are required to apply the ambulance services fee schedule in a manner consistent with the effective date of the final rule."

85. The MAC invited Plaintiff to file a claim in this Court within sixty (60) days of Plaintiff Lifestar's receipt of the MAC's decision.

## PLAINTIFFS COASTAL AND ASI'S ADMINISTRATIVE APPEAL

86. On January 12, 2005, Plaintiffs Coastal and ASI mailed their requests for administrative appeal to CIGNA, the relevant Medicare administrator for Tennessee and North Carolina.

87. Plaintiffs Coastal and ASI continued corresponding with CIGNA throughout 2005.

88. CIGNA would not commence or deny the administrative appeals process for Plaintiffs Coastal and/or ASI on the grounds that CIGNA needed further information from Plaintiffs concerning "each claim."

89. CIGNA had all pertinent information about the services furnished by Plaintiffs Coastal and ASI within its own computer systems during the Relevant Time Periods.

90. Nevertheless, on or around May 12, 2005, Plaintiffs offered to submit the full EOBs (Explanation of Benefits) for all services provided by Plaintiffs Coastal and ASI during the Relevant Time Periods.

91. From May 2005 onward, Plaintiffs have continued to offer to submit the EOBs for all services provided by Plaintiffs Coastal and ASI during the Relevant Time Periods, but have also pointed out that it is unnecessary because the Carrier already had all of the information it had requested.

92. CIGNA informed Plaintiffs Coastal and ASI on or around August 6, 2005 that it would research whether they actually needed the additional information and inform Plaintiffs whether it would require Plaintiffs to submit the full EOBs for all services provided by Plaintiffs Coastal and ASI during the Relevant Time Periods in order to commence an administrative appeal.

93.     Plaintiffs Coastal and ASI repeatedly contacted CIGNA via letter, fax and email to ask whether CIGNA would require Plaintiffs to submit the full EOBs for all services provided by Plaintiffs Coastal and ASI during the Relevant Time Periods.

94.     CIGNA has never informed Plaintiffs Coastal and ASI whether Plaintiffs must submit the full EOBs for all services provided by Plaintiffs Coastal and ASI during the Relevant Time Periods.

95.     Despite Plaintiffs' requests, CIGNA has never commenced or denied the administrative appeals process for Plaintiffs Coastal and ASI.

## CLASS ACTION ALLEGATIONS

96.     This action is brought and may be maintained properly as a class action pursuant to Fed. R. Civ. P. 23(b)(2).

97.     **Definition of the Class.** Plaintiffs bring this action individually and on behalf of the following class:

> All ambulance service providers in the United States covered by the provisions of the 1997 BBA that provided ambulance services to Medicare eligible recipients during the period January 1, 2000, through March 31, 2002.

98.     Plaintiffs Coastal and ASI also bring this action individually and on behalf of the following subclass:

> All ambulance service suppliers in the states covered by the provisions of the 2000 BIPA that provided ambulance services to Medicare eligible recipients during the period July 1, 2001, through March 31, 2002.

99.     Plaintiffs bring claims in their individual and representative capacity on behalf of the class and subclass defined herein for injunctive relief, specific performance of obligations imposed on Defendants by law, mandamus, as well as incidental damages flowing from the mandamus relief, if granted.

-13-

100.     **Numerosity.**  The class is so numerous that individual joinder of all class members as parties to this action would be impractical.  Plaintiffs allege that the class consists of hundreds of members and most likely exceeds thousands of members.

101.     **Existence and predominance of common questions of law and fact.**  Questions of law and fact of common and general interest to the class exist as to all class members and predominate over any questions affecting only individual members of the class.  Said common questions include, but are not limited to, the following:

   (a) Whether Defendants have failed to comply with the 1997 BBA by not publishing or implementing a uniform fee schedule effective January 1, 2000;

   (b) Whether Defendants have failed to comply with the 2000 BIPA by not publishing or implementing uniform provisions for compensating mileage effective July 1, 2001;

   (c) Whether Plaintiff and others similarly situated should be paid the damages incident to a mandamus Order directing Defendants to comply with their legal obligations; and

   (d) Whether Plaintiff and others similarly situated have received less for services rendered than they should have received under a fee schedule for services furnished during the relevant time frames, as mandated by the United States Congress.

102.     **Typicality.**  Plaintiffs' claims are typical of class members' claims because each member of the proposed class has been subjected to Defendant's refusal to comply with the 1997 BBA's requirement for a congressionally mandated compensation system for ambulance services furnished to Medicare patients on or after January 1, 2000.

103.    **Adequate representation.** Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of the class members. Plaintiffs have retained class counsel competent to prosecute class actions, including governmental class actions.

104.    **Superiority.** A class action is superior to other available methods for a fair and efficient adjudication of this controversy since individual joinder of all members of the class is impractical. Also, many class members may not be aware that they possess claims against Defendants. The interests of judicial economy favor adjudicating these claims on a class-wide basis.

105.    **Ascertainability.** The precise identity of the class members is readily ascertainable based on objective criteria and can be ascertained using information possessed by Defendants, along with computer records and clerical assistance – thus rendering unnecessary an evidentiary hearing on each claim.

106.    **Risk of inconsistent or varying adjudications.** Class action treatment is proper, and this action should be maintained as a class action because the maintenance of separate actions by individual members of the class would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants, as the party opposing the class; and/or (b) adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of other class members not party to the adjudication or would substantially impair or impede their ability to protect their interests. In addition, Defendants, as the parties opposing the class, have acted or refused to act on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.

107.    **Rule 23(b)(2).** By failing to enact a fee schedule applicable to services furnished during the relevant time frames, Defendants have acted or refused to act on grounds generally applicable to the class. Final injunctive relief, in the form of mandamus, is therefore appropriate.

## DAMAGES INCIDENT TO MANDAMUS RELIEF

108.    Plaintiffs and others similarly situated have suffered damages including, but not limited to, loss of the payment for services to which they are entitled under federal law for ambulance services furnished during the relevant time frames. These damages will flow incidentally and directly from the mandamus Order sought by Plaintiff and the class.

66.    Specifically, Plaintiffs and others similarly situated have received less for services rendered than they should have received for services furnished during the relevant time frames.

## PLAINTIFFS COASTAL AND ASI'S PRAYER FOR MANDAMUS RELIEF

67.    Plaintiffs Coastal and ASI alternatively plead this Court enter mandamus or injunctive relief compelling Defendants to cause CIGNA, the relevant Medicare administrator for Tennessee and North Carolina, to issue a ruling either commencing or denying Plaintiffs' administrative appeal referenced in paragraphs 86 through 95, above, in accordance with Defendants' statutory and regulatory duties.

WHEREFORE Plaintiffs pray for the following relief:

(a)    That proper process issue and be served upon Defendants named herein and that Defendants be required to appear and answer this Complaint within the time set by law;

(b)    That this cause be certified as a class action pursuant to FED. R. CIV. P. 23(b)(2);

(c)     That this Court order Defendants to perform their duties pursuant to federal law and the findings of this Court, including a writ of mandamus or injunction;

(d)     That Plaintiffs and the class members be awarded the monetary damages that flow incidentally and directly as a result of the Court's mandamus Order; and

(e)     That Plaintiffs and others similarly situated be awarded such other and further relief to which they may be entitled and that this Court deems appropriate.

This 28th day of September, 2007.

**BUTLER, WOOTEN & FRYHOFER, LLP**

s/Joel O. Wooten
Georgia Bar No. 776350
James E. Butler, Jr.
Georgia Bar No. 099625
P.O. Box 2766
Columbus, GA 31902-2766
(706)322-1990

**HARMON, SMITH, BRIDGES & WILBANKS**
Marlan B. Wilbanks
Georgia Bar No. 758223
1795 Peachtree Road, NE
Suite 350
Atlanta, GA 30309-2339
(404) 881-1200

**KHRISTIE L. KELLY**
**ATTORNEY AT LAW**
Georgia Bar No. 412755
5. S. Public Square
Cartersville, GA 30120
(678) 793-2251

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record for Defendants.

This 28th day of September, 2007.

                s/Joel O. Wooten
                Georgia Bar No. 776350

Post Office Box 2766
Columbus, GA 31902
(706)322-1990