IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION


LIFESTAR AMBULANCE SERVICE, INC.,*
a Georgia Corporation,
individually and on behalf of a    *
class of all entities similarly
situated; COASTAL MEDICAL          *
TRANSPORT, INC., a North
Carolina Corporation,              *
individually and on behalf of a
class of all entities similarly    *
situated; AMBULANCE SERVICES,
INC., a Tennessee Corporation,     *
individually and on behalf of a
class of all entities similarly    *
situated,
                                   *
     Plaintiffs,
                                   *
vs.                                    CASE NO. 4:07-CV-89(CDL)
                                   *
UNITED STATES OF AMERICA; THE
DEPARTMENT OF HEALTH AND HUMAN     *
SERVICES and MICHAEL LEAVITT in
his official capacity as           *
Secretary/Director of DHHS; THE
HEALTH CARE FINANCING              *
ADMINISTRATION (CENTERS FOR
MEDICARE & MEDICAID SERVICES)      *
and LESLIE V. NORWALK in her
official capacity as Secretary/    *
Administrator of HCFA/CMS,
                                   *
     Defendants.
_____    *

O R D E R

     This  putative  class  action  arises  from  a  dispute  over

Defendants' responsibility to set fee schedules specifying the

Medicare reimbursement rates for the Plaintiff ambulance service

providers.  Plaintiffs' Amended Complaint asserts that Defendants

1

failed to comply with the congressional directive requiring implementation of these fee schedules by certain dates. Plaintiffs bring claims against the Department of Health and Human Services ("DHHS"), the Centers for Medicare and Medicaid Services ("CMS"),[1] and officials of those organizations.

Presently pending before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 5). For the following reasons, this motion is granted in part and denied in part.

STANDARD FOR 12(b)(1) MOTION TO DISMISS

The Eleventh Circuit recognizes two types of challenges to a district court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. A "facial attack" on a complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction[.]" *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (second alteration in original) (internal quotation marks and citation omitted). On the other hand, a "factual attack" on a complaint "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.* at 1529 (internal quotation marks and citation omitted). Because Defendants contend that Plaintiff has not alleged a sufficient basis for subject matter jurisdiction, Defendants' motion presents a facial attack on the

_____

[1]This entity was formerly known as the Health Care Financing Administration ("HCFA").

Court's jurisdiction. Accordingly, the Court must consider the allegations of Plaintiffs' Amended Complaint to be true. *See id.*

FACTUAL BACKGROUND[2]

## I. Plaintiffs' Claims

Plaintiffs provide ambulance services to Medicare beneficiaries and are compensated in accordance with statutory directives. In 1997, Congress enacted the Balanced Budget Act of 1997 ("BBA"), Pub. L. No. 105-33, 111 Stat. 251 (codified as amended in scattered sections of the U.S.C.), which mandated, among other things, the establishment of a national fee schedule that would govern reimbursement rates for ambulance service providers. The BBA expressly required DHHS to apply the revised fee schedules "to services furnished on or after January 1, 2000." Pub. L. No. 105-33, § 4531(b)(2) & (3) (codified in part at 42 U.S.C. § 1395m(l)). DHHS adopted the national fee schedule pursuant to the BBA but applied it only to services furnished on or after April 1, 2002.

Similarly, the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000, ("BIPA"), Pub. L. No. 106-554, 114 Stat. 2763 (codified as amended in scattered sections of 42 U.S.C.) was enacted, in relevant part, to compensate those ambulance providers

---

[2]Because this case appears before the Court for a second time, the Court finds it unnecessary to discuss Plaintiffs' claims in great detail. For a more complete discussion of the facts giving rise to this litigation, see *Lifestar Ambulance Service, Inc. v. United States*, 211 F.R.D. 688, 690-92 (M.D. Ga. 2003) [hereinafter, *Lifestar I*], *rev'd*, 365 F.3d 1293 (11th Cir. 2004) [hereinafter *Lifestar II*], *cert. denied*, 543 U.S. 1050 (2005).

3

that failed to receive payments for miles traveled in their home counties. *See* 42 U.S.C. § 1395m(l)(2)(E). The BIPA expressly required DHHS to apply an amended fee schedule covering these payments to all services rendered on or after July 1, 2001. Pub. L. No. 106-554, § 423(b)(2) (codified in part at 42 U.S.C. § 1395m). Despite this clear directive, DHHS applied the new fee schedule only to services rendered on or after April 1, 2002.

Plaintiffs challenge Defendants' failure to apply the revised fee schedules on the effective dates mandated by Congress. Specifically, all Plaintiffs allege that from January 1, 2000 to March 31, 2002, they were entitled to higher payments under the revised fee schedule mandated by the BBA. In addition, Plaintiffs Coastal Medical Transport, Inc. ("Coastal") and Ambulance Services, Inc. ("ASI") allege that they were entitled to compensation for certain mileage traveled from July 1, 2001 through March 31, 2002 in accordance with the revised fee schedule mandated by the BIPA.

## II.  Procedural History

### A.   *Lifestar I* and *Lifestar II*

Plaintiffs first raised these claims in a previous lawsuit filed in this Court in 2002 ("*Lifestar I*"). Defendants moved to dismiss the complaint in that action, contending that Plaintiffs failed to exhaust their administrative remedies as required by the Medicare Act, 42 U.S.C. § 1395 *et seq*. The parties agreed that summary judgment was appropriate to resolve the case on the merits, since no

4

genuine issues of material fact existed. Plaintiffs also filed a motion for class certification.

The Court exercised mandamus jurisdiction over the action because it found that Defendants owed a clear, nondiscretionary duty to Plaintiffs and because the relief sought by Plaintiffs could not realistically be secured through the administrative appeals process. *Lifestar Ambulance Svc., Inc. v. United States*, 211 F.R.D. 688, 695 (M.D. Ga. 2003) [hereinafter, *Lifestar I*], *rev'd*, 365 F.3d 1293 (11th Cir. 2004) [hereinafter *Lifestar II*], *cert. denied*, 543 U.S. 1050 (2005). The Court thus granted Plaintiffs' motions for summary judgment and for class certification and denied Defendants' motions to dismiss and for summary judgment. *Id.* The Court also ordered DHHS to adopt fee schedules covering the relevant time periods. *Id.* at 698; *see generally* 68 Fed. Reg. 18654-02 (Apr. 16, 2003) (notice of ambulance fee schedule adopted in accordance with the Court's order).

Defendants appealed, and the Eleventh Circuit Court of Appeals determined that the Court did not have mandamus jurisdiction over Plaintiffs' claims because Plaintiffs failed to exhaust their administrative remedies. *Lifestar II*, 365 F.3d at 1298. The Eleventh Circuit reversed the Court's decision and remanded it with instructions to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. *Id.* Following the directive from the Court of

Appeals, the action was dismissed after certiorari was denied by the Supreme Court.

B.   Plaintiffs' Exhaustion of Administrative Remedies

In response to the *Lifestar II* decision, Plaintiffs attempted to negotiate the Medicare appeals process.    "The Medicare Act establishes a comprehensive remedial scheme, providing both administrative hearing rights for aggrieved providers, such as plaintiffs, and judicial review of the Secretary's final decisions." *Lifestar II*, 365 F.3d at 1295.   This remedial scheme is described by regulation:

> The Medicare carrier makes an initial determination when a request for payment for Part B benefits is submitted.   If an individual beneficiary is dissatisfied with the initial determination, he or she may request, and the carrier will perform, a review of the claim.   Following the carrier's review determination, the beneficiary may obtain a carrier hearing if the amount remaining in controversy is at least $100.   The beneficiary is also entitled to a carrier hearing without the benefit of a review determination when the initial request for payment is not being acted upon with reasonable promptness (as defined in § 405.802). Following the carrier hearing, the beneficiary may obtain a hearing before an ALJ if the amount remaining in controversy is at least $500.   If the beneficiary is dissatisfied with the decision of the ALJ, he or she may request the Departmental Appeals Board (DAB) to review the case.   Following the action of the DAB, the beneficiary may file suit in Federal district court if the amount remaining in controversy is at least $1,000.

42 C.F.R. § 405.801(a).   The regulations also define what constitutes an "initial determination."    *Id*. § 405.803.   For example, the resolution of "[a]ny issue or factor" for which the Social Security Administration or CMS "has sole responsibility" is not considered an "initial determination."   *Id.* § 405.803(c)(1).

## 1. *Administrative Appeals of Lifestar*

As this Court predicted in *Lifestar I,* the administrative appeals process proved futile. Lifestar's administrative appeal confirmed this Court's previous finding that:

> [T]he relief sought by the Plaintiffs in this case could not be secured in the administrative process. Plaintiffs seek the implementation of fee schedules complying with the clear intent of Congress. Achieving this result will require either amending the current fee schedule so that it will apply to the time periods directed by Congress, or adopting a new fee schedule that applies to the relevant time frame and that complies with all the conditions set out by Congress . . . . It is doubtful that an administrative law judge has the authority to order DHHS to rewrite its regulations to conform to the direction of Congress. Thus, Plaintiffs are seeking relief that could not be obtained administratively.

*Lifestar I,* 211 F.R.D. at 695.

Plaintiffs' Amended Complaint alleges that "[o]n or around January 12, 2005, Plaintiff Lifestar [("Lifestar")] submitted its administrative appeal on behalf of itself and other similarly situated suppliers to Cahaba, the relevant Medicare administrator in Georgia." (Am. Compl. ¶ 62.) Lifestar alleges that it struggled with Cahaba for nearly nine months before Cahaba finally issued its review determination. (*Id.* ¶¶ 64-69.) Cahaba's review determination denied Lifestar's claims as untimely submitted. (*Id.* ¶ 69.)

On November 9, 2005, Lifestar appealed Cahaba's denial to a Medicare Hearing Officer, who determined that Lifestar's original administrative appeal was timely. (*Id.* ¶¶ 71-72.) The Hearing Officer also concluded, however, "that there is no remedy for the issue at hand via the administrative appeals process, therefore, no

7

redetermination or hearing should be conducted." (Ex. 3 to Pls.' Resp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction at 8 [hereinafter, Pls.' Resp.].) The Hearing Officer determined that "CMS had the sole responsibility for determining whether or not the ambulance fee schedule should have been instituted for claims with service dates from January 1, 2000 through March 31, 2002." (*Id.* at 9.) The Hearing Officer concluded that "[t]here are no further appeal rights available via the administrative appeals process[,]" (*id.*), presumably because the denials of Plaintiffs' claims were not "initial determinations."

Notwithstanding the Hearing Officer's conclusion that further appeal rights were not available to it, Lifestar appealed the Medicare Hearing Officer's decision to an ALJ on March 2, 2006. (Am. Compl. ¶ 75.) On October 2, 2006, the ALJ also determined, as this Court predicted in *Lifestar I,* that there was no remedy for Lifestar's claims via the administrative process. (*Id.* ¶ 77.) The ALJ reasoned that his authority extended only to the resolution of initial determination appeals and that Lifestar was not challenging an initial determination. (Ex. 1 to Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction at 7 [hereinafter, Defs.' Mem.].) Accordingly, the ALJ had "no jurisdictional authority in the instant forum to issue a decision mandating implementation of, or payment based upon, an ambulance fee schedule in contravention of the applicable federal regulations." (*Id.* at 8.)

Despite receiving a second determination that the administrative process was insufficient to remedy its claims, Lifestar continued to press its appeal in an effort to fully comply with the Eleventh Circuit's decision in *Lifestar II.* (Am. Compl. ¶¶ 79-80.) On December 4, 2006, Lifestar appealed the ALJ's determination to the Medicare Appeals Council ("MAC"). On March 26, 2007, the MAC likewise determined that there was no regulatory basis for reviewing the ALJ's decision, concluding that "[b]oth the ALJ and the Council are required to apply the ambulance services fee schedule in a manner consistent with the effective date of the final rule." (Ex. 4 to Pls.' Resp. at 5.) Because the decision of the MAC was a "final decision" as required by statute, Lifestar properly filed the instant action in this Court on May 18, 2007. *See* 42 U.S.C. § 405(g).

2. *Administrative Appeals of Coastal and ASI*

Plaintiffs Coastal and ASI also began the administrative review process on January 12, 2005. (Am. Compl. ¶ 86.) Coastal and ASI mailed their requests for an initial determination to CIGNA, the relevant Medicare administrator for Tennessee and North Carolina. (*Id.*) Coastal and ASI allege that although they corresponded with CIGNA throughout 2005, "CIGNA would not commence or deny the administrative appeals process . . . on the grounds that CIGNA needed further information from Plaintiffs concerning 'each claim.'" (*Id.* ¶ 88.) Coastal and ASI further allege that in early August of 2005, CIGNA informed them that it would research what paperwork was required to commence or deny the administrative appeal. (*Id.* ¶ 92.)

Coastal and ASI maintain that they have offered to submit all paperwork relevant to each service provided during the time periods at issue, although it is likely that CIGNA already possesses these records. In an effort to elicit a final decision, Coastal and ASI aver that they have continued to contact CIGNA, but "[d]espite Plaintiffs' requests, CIGNA has never commenced or denied the administrative appeals process for Plaintiffs Coastal and ASI." (*Id.* ¶ 95.) Defendants contend that as of August of 2007, CIGNA had begun processing Plaintiffs' administrative appeal and was waiting on Plaintiffs to submit the proper paperwork to continue.

## III. Pending Motion to Dismiss

Defendants argue that their motion to dismiss should be granted because Plaintiffs' Amended Complaint still contains no valid basis for subject matter jurisdiction and because the Eleventh Circuit's decision in *Lifestar II* has preclusive effect over the matters actually adjudicated in that decision: (1) "the applicability of the Medicare Act to Plaintiffs' claims"; (2) "the failure of Plaintiffs to qualify for waiver of exhaustion under the Act"; and (3) "the unavailability of mandamus jurisdiction to resolve those claims[.]" (Defs.' Mem. 12 n.8.) Defendants submit that the Eleventh Circuit's decision in *Lifestar II* forecloses jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1346, and the Mandamus Act. In addition, Defendants contend that any claims which have not been timely exhausted are also barred.

10

DISCUSSION

## I.  Jurisdiction under Sections 1331 and 1346

Plaintiffs' Amended Complaint first alleges that 42 U.S.C. §§ 1331 and 1346 provide the Court with a basis for subject matter jurisdiction over their claims.  Defendants respond that because this case "arises under" the Medicare Act, the statute prevents the Court from exercising jurisdiction pursuant to § 1331 or § 1346.

Certain provisions of the Social Security Act are made applicable to the Medicare Act pursuant to 42 U.S.C. § 1395ii.  Among those provisions is § 405(h) of the Social Security Act.  *See* 42 U.S.C. § 1395ii.  Section 405(h) requires that claims "arising under" the Medicare statute be channeled through the administrative appeals process and specifically precludes jurisdiction "under section 1331 or 1346 of Title 28" for "any claim arising under" the Medicare Act. 42 U.S.C. § 405(h).[3]

---

[3]The courts have carved out a narrow exception to this jurisdictional bar "where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000).  This exception applies equally to reviews of Medicare Part A and Medicare Part B determinations. *Id.*  The *Lifestar II* decision, however, would seem to foreclose reliance on this exception.  The Eleventh Circuit plainly held that Medicare's "comprehensive remedial scheme, providing both administrative hearing rights for aggrieved providers, such as plaintiffs, and judicial review of the Secretary's final decisions" was adequate to provide Plaintiffs the relief they seek.  *Lifestar II*, 365 F.3d at 1295, 1297 (observing that "a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide") (internal quotation marks and citation omitted)).  Therefore, Plaintiffs' argument that the application of § 405(h) would preclude all meaningful review must fail, having been rejected by the Court of Appeals in *Lifestar II*.

Plaintiffs contend that "[i]t is nonsensical that Plaintiffs' claims can 'arise under' the Medicare Act when the Medicare Administration's own appellate process does not have jurisdiction to consider Plaintiffs' claims." (Pls.' Resp. 8 n.4.) However, the fact that this particular type of claim cannot be addressed by the administrative review process does not inescapably lead to the conclusion that the claim does not arise under the Medicare Act. *See, e.g., Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 23-24 (2000) (finding that a claim could still arise under the Medicare Act even though "the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one"). Perhaps more importantly, the Eleventh Circuit's decision in *Lifestar II* appears to confirm, at least implicitly, that Plaintiffs' claims arise under the Medicare Act. *See, e.g., Lifestar II*, 365 F.3d at 1296 (noting that "the Medicare statute demands the channeling of virtually all legal attacks through the [DHHS] before a health care provider may seek judicial review of a claim arising under the Medicare statute" and then expressly requiring this channeling) (internal quotation marks and citation omitted) (alteration in original)). This Court, being constrained by *Lifestar II*, therefore rejects Plaintiffs' argument that their claims do not "arise under" the Medicare Act and finds that § 405(h) prevents the Court from exercising jurisdiction over Plaintiffs' claims under either § 1331 or § 1346.

## II.  Mandamus Jurisdiction

Plaintiffs also contend that mandamus jurisdiction is now appropriate in this case and is not precluded by *Lifestar II* or § 405 of the Medicare Act.  *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").  It appears that neither the Eleventh Circuit nor the United States Supreme Court has decided whether mandamus relief is available for claims arising under the Medicare Act.  *See Your Home Visiting Nurse Svcs., Inc. v. Shalala*, 525 U.S. 449, 456 n.3 (1999) ("The Secretary urges us to hold that mandamus is altogether unavailable to review claims arising under the Medicare Act . . . .  We have avoided deciding this issue in the past, and we again find it unnecessary to reach it today." (internal citation omitted)); *Lifestar II*, 365 F.3d at 1295 n.3 ("We assume, without deciding, that mandamus jurisdiction is not barred by 42 U.S.C. § 405(h) and, therefore, is available for a claim arising under the Medicare statute."); *see also BP Care, Inc. v. Thompson*, 398 F.3d 503, 515 (6th Cir. 2005) (observing that the question whether § 405(h) bars mandamus jurisdiction has become less important because the Supreme Court's decisions have "an effect similar to that of placing mandamus within § 405(h)'s jurisdictional bar").

Regardless of the availability of mandamus relief under the Medicare Act, the Eleventh Circuit's decision in *Lifestar II* appears

to foreclose the availability of mandamus jurisdiction under the facts of this particular case. Mandamus jurisdiction will only lie when "(1) the defendant owes a clear nondiscretionary duty to the plaintiff and (2) the plaintiff has exhausted all other avenues of relief." *Lifestar II*, 365 F.3d at 1295 (citing *Heckler v. Ringer*, 466 U.S. 602, 615 (1984)). The *Lifestar II* court clearly stated:

> The administrative review provided by Medicare's administrative hearing officers is but the first step in a comprehensive statutory remedial scheme that fully empowers a reviewing court to consider and remedy any of the violations of law alleged by plaintiff here. In view of the controlling authority that postponement of judicial review does not amount to a preclusion of review, plaintiffs may not avail themselves of mandamus jurisdiction where there is "another means to obtain adequate review."

*Lifestar II*, 365 F.3d at 1298. Plaintiffs' claims must be channeled through Medicare's remedial scheme, and "[i]n the face of this comprehensive statutory scheme, it cannot be said that the second requirement for mandamus review—that there be no alternative avenues of relief—is met." *Id.* Because the Court has the ability to review the Secretary's administrative decisions and provide adequate relief, mandamus jurisdiction is not appropriate in this case. *See Ill. Council*, 529 U.S. at 23-24 ("a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide"); *Lifestar II*, 365 F.3d at 1298. According to the law of this Circuit, therefore, it does not matter that pursuit of the administrative remedy is absolutely futile. Since the Court will

ultimately review the agency's administrative decision that the agency does not have the authority to provide the requested relief, the Plaintiffs are deemed to have an adequate administrative remedy even though it requires them (and the agency) to waste time and effort clearing futile administrative hurdles before reaching the judicial finish line.

## III. Jurisdiction under Section 405

The only remaining basis for subject matter jurisdiction alleged by Plaintiffs is 42 U.S.C. § 405.[4]  Section 405(g) gives the district court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary of Health and Human Services], with or without remanding the cause for a rehearing."  To obtain § 405(g) judicial review, a party must comply with two requirements: "One is that the administrative remedies prescribed by the Secretary be exhausted. The other is that a claim for benefits be presented to the Secretary. The exhaustion prerequisite may be waived.  The necessity of presenting a claim to the Secretary is jurisdictional and non-

---

[4]The Medicare statute incorporates § 405(g) into its remedial scheme, providing that

> any individual dissatisfied with any initial determination . . . shall be entitled to reconsideration of the determination[] and . . . a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and . . . to judicial review of the Secretary's final decision . . . . as is provided in section 405(g) of this title.

42 U.S.C. § 1395ff(b)(1)(A).

waivable." *Ellison v. Califano*, 546 F.2d 1162, 1164 (5th Cir. 1977).[5] Defendants concede for purposes of their 12(b)(1) motion that "all Plaintiffs appear facially to have satisfied the presentment requirement insofar as they submitted claims for benefits[.]" (Defs.' Mem. 18-19.) Defendants maintain, however, that only those Plaintiffs who have obtained a "final decision" from the Secretary have met the statutory exhaustion requirement.

It is clear that Lifestar has obtained a "final decision" with respect to its BBA claims such that this Court has jurisdiction to review the ALJ's decision. (Ex. 4 to Defs.' Mem. at 5 ("The ALJ's decision stands as the final decision of the Secretary.").) Accordingly, the Court has jurisdiction over Lifestar's claims pursuant to § 405(g), and Defendants' motion to dismiss is denied as to these claims.

In contrast, Coastal and ASI have yet to exhaust their administrative remedies despite attempting to do so.[6] (*See* Am. Compl. ¶¶ 86-95.) The Amended Complaint also contains no allegation that the unnamed class members have individually exhausted their administrative remedies. Plaintiffs argue that (1) the Court should

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[6]Lifestar never asserted any claims under the BIPA. It is therefore clear that no named Plaintiff has exhausted its remedies with respect to any BIPA claim.

16

find that Plaintiffs ASI and Coastal have sufficiently exhausted their administrative remedies because CIGNA has delayed unreasonably in either commencing or denying the administrative appeals process; (2) Lifestar exhausted its remedies on behalf of each putative class member; and (3) exhaustion should be waived in this case because Lifestar's experience demonstrates that resort to the administrative process is futile. The Court addresses each contention in turn.

First, Plaintiffs argue that CIGNA has purposely delayed the administrative appeals process by spending an inordinate amount of time "researching" what paperwork Coastal and ASI must submit to facilitate the appeals process. Plaintiffs argue that this delay has prevented them from obtaining a "final decision" capable of judicial review, and thus, the Court should find that Coastal and ASI have sufficiently exhausted their administrative remedies. In the alternative, Plaintiffs argue that the Court should order CIGNA to either commence or deny the appeals process. Defendants respond that as of August 15, 2007, CIGNA had begun processing the administrative claims of Coastal and ASI. (*See* Ex. 2 to Defs.' Reply Mem. (letter sent from CIGNA to Plaintiffs directing Plaintiffs to a web site containing requirements for perfecting redetermination request)). Defendants also aver that "[u]pon receipt of the necessary information from Coastal and ASI, Defendants will continue to process their administrative claims." (Defs.' Reply Mem. 13.) The Court concludes that the *Lifestar II* decision requires Coastal and ASI to

17

channel their claims through the administrative process. Furthermore, while the Court has concerns as to whether Defendants are being dilatory in the processing of these Plaintiffs' claims, the Court does not find that the present record authorizes the Court to order specific deadlines at this time for processing the pending claims.

Plaintiffs next contend that Lifestar exhausted its administrative remedies on behalf of itself and all other entities similarly situated. Defendants argue that Lifestar's exhaustion does not suffice to satisfy the jurisdictional prerequisite of exhaustion on behalf of the remaining parties in this case. Plaintiffs direct the Court to no authority that would permit Lifestar to act in a representative capacity such that Lifestar's actions could directly fulfill § 405(g)'s exhaustion requirement on behalf of the remaining Plaintiffs.[7] Instead, the law requires that each party must individually exhaust its remedies unless waiver of exhaustion is found to be appropriate. *See Crayton v. Callahan*, 120 F.3d 1217, 1220 (11th Cir. 1997) (requiring that a "claimant must have completed each of the steps of the administrative review process unless exhaustion has been waived"); *see also Weinberger v. Salfi*, 422 U.S. 749, 764 (1975) (dismissing unnamed class members because the

---

[7]The Medicare Hearing Officer who handled Lifestar's administrative appeal also noted that a Medicare Senior Fair Hearing Research Analyst advised Plaintiffs "that Medicare could only consider individual appeals, or at most a consolidated group of individually identified appeals for claims that are within the carrier's jurisdiction." (Ex. 3 to Pls.' Resp. at 7.)

complaint "contain[ed] no allegations that they ha[d] even filed an application with the Secretary, much less that he has rendered any decision, final or otherwise, review of which is sought"). Plaintiffs' Amended Complaint is devoid of any allegation that each of the unnamed Plaintiffs in this case attempted to individually exhaust its administrative remedies, and the Eleventh Circuit has already concluded that waiver is not appropriate in this case. *See Lifestar II*, 365 F.3d at 1296 n.5 ("Although the exhaustion requirement may be waived, plaintiffs cannot meet any of the three requirements for waiver . . . ." (internal citations omitted)).

Plaintiffs finally argue that the Court should reexamine the waiver of exhaustion issue in light of Lifestar's experience with the administrative review process. The Eleventh Circuit applies a three-part test to determine whether waiver of exhaustion is applicable: "(1) are the issues entirely collateral to the claim for benefits; (2) would failure to waive cause irreparable injury; and (3) would exhaustion be futile." *Crayton*, 120 F.3d at 1220 (citing *Bowen v. City of New York*, 476 U.S. 467, 483 (1986)). Plaintiffs contend that (1) Lifestar's experience has shown that administrative review is futile for this type of claim; (2) they will suffer irreparable injury because Defendants oppose equitable tolling; and (3) their claims for injunctive relief have been shown to be collateral to their claims for benefits.

19

In resolving this issue, the Court is once again constrained by the Eleventh Circuit's decision in *Lifestar II*, which forecloses relitigation of the jurisdictional issues already addressed. *See N. Ga. Elec. Membership Corp. v. City of Calhoun, Ga.*, 989 F.2d 429, 433 (11th Cir. 1993) (observing that while "dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims." (internal quotation marks and citation omitted)). The *Lifestar II* court concluded that "[a]lthough the exhaustion requirement may be waived, plaintiffs cannot meet any of the three requirements for waiver[.]" 365 F.3d at 1296 n.5 (internal citations omitted). Although Lifestar's experience demonstrates the futility of the administrative process for this type of claim, that does not mean, under *Lifestar II,* that the remaining Plaintiffs have shown they will now suffer irreparable injury if forced to exhaust or that their claims are now collateral to their claims for benefits.[8] The Court

_____

[8]To support their argument that the exhaustion requirements should be reexamined, Plaintiffs cite the fact that Defendants oppose equitable tolling as evidence of irreparable injury; however, the Court finds that any limitations problems that may cause irreparable injury can be addressed by a proper application of equitable tolling. Plaintiffs also contend that the Eleventh Circuit's decision in *Lifestar II* somehow demonstrates that Plaintiffs' claims are wholly collateral to their claim for benefits. However, Plaintiffs have failed to demonstrate why this is true or why this Court should reexamine the Eleventh Circuit's decision with respect to whether Plaintiffs' claims are now collateral to their claims for benefits.

thus concludes that Plaintiffs remain unable to demonstrate that they meet all three requirements for waiver of exhaustion.

In sum, the Court finds that Lifestar received a "final decision" from the Secretary and that the Court may exercise jurisdiction over its claims. The Court further finds that the remaining named Plaintiffs—as well as the unnamed putative class members in this case—have not exhausted their administrative remedies. Accordingly, the Court does not have subject matter jurisdiction to entertain those claims, which arise under both the BBA and the BIPA. Defendants' motion to dismiss must therefore be granted with respect to any claims by ASI, Coastal, and the unnamed putative class members.

## IV. Equitable Tolling

Defendants also argue that certain claims of all Plaintiffs are barred due to Plaintiffs' failure to press those claims within the statutorily-prescribed limitations period. The Medicare appeals scheme imposes various deadlines on parties seeking to pursue an administrative appeal. As previously discussed, if a party is dissatisfied with its initial determination of benefits, it may request a review determination. For review requests made prior to May 1, 2005, a party must request review within six months of the notice of the initial determination. 42 C.F.R. § 405.807(c). For review requests made after May 1, 2005, a provider has 120 days to request review. 42 C.F.R. § 405.942(a). A provider must request a

hearing before a Medicare Hearing Officer within six months of the review determination. 42 C.F.R. § 405.821(c). The provider then has sixty days from the receipt of an unfavorable decision by the Hearing Officer to request an ALJ hearing. 42 C.F.R. § 405.855(a)(1). An individual wishing to obtain judicial review of a "final decision" must do so within sixty days of that decision. 42 U.S.C. § 405(g).

Plaintiffs contend that the doctrine of equitable tolling preserves their claims even if their claims ordinarily would have lapsed due to their failure to timely comply with these regulations. Plaintiffs maintain that during the period "[p]rior to February 27, 2002, suppliers like Plaintiffs were in what Defendants' counsel [has previously] described . . . as a 'twilight zone' regarding the availability of administrative relief[]" because the fee schedules did not yet exist. *Lifestar I*, 211 F.R.D. at 695. Plaintiffs therefore contend that they should be excused from the limitations requirements because "for most of the dates of service at issue, the time for filing any administrative claims had expired before the right to challenge the claims arose; therefore there was no administrative process available and there was no way to bring these claims in a timely manner." (Am. Compl. ¶ 51.) In other words, Plaintiffs contend that although they may have recognized that Defendants were derelict in enacting the revised fee schedules, they had no way of knowing for certain whether they would be entitled to

higher payments under the new fee schedules or whether the new fee schedules would be made retroactive.

Defendants reply that the proposed rule published in the September 12, 2000 Federal Register clearly indicates that the new fee schedules would not be implemented by the statutory deadline and that the new schedules would not be made retroactive. *See* 65 Fed. Reg. 55,078, 55,085-86 (Sept. 12, 2000) (codified at 42 C.F.R. § 414.610). Thus, Defendants claim that equitable tolling is not appropriate because Plaintiffs knew they had claims and should have acted to preserve their rights as of the date the proposed rule was published. Defendants also contend that equitable tolling is not warranted because Plaintiffs failed to show "that the Secretary had a clandestine policy that, due to its secret and unknowable nature, prevented claimants from recognizing that they had a valid claim that they could challenge administratively." (Defs.' Mem. 22.)

The Eleventh Circuit recently reaffirmed "that the doctrine of equitable tolling is available to a claimant whose § 405(g) challenge in the district court was untimely." *Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007). "[I]n the context of § 405(g), . . . traditional equitable tolling principles require a claimant to justify her untimely filing by a showing of extraordinary circumstances." *Id.* A plaintiff may demonstrate such "extraordinary circumstances" by demonstrating, *inter alia*, that the plaintiff "has no reasonable way of discovering the wrong perpetrated against [it.]"

*Id.* (internal quotation marks and citation omitted). It is true that "to apply equitable tolling, courts usually require some affirmative misconduct, such as deliberate concealment." *Jackson*, 506 F.3d at 1356 (internal quotation marks and citation omitted). However, the Eleventh Circuit has also determined that it would not "be unwilling to equitably toll a statute of limitations where there is no evidence of deliberate concealment," in certain circumstances. *Id.* at 1356-57. The facts of this case, at least with respect to Plaintiffs' BBA claims, are such that "extraordinary circumstances" permit equitable tolling from January 1, 2000 through February 27, 2002.[9]

The proposed rule contained in the Federal Register does indicate that Defendants would not be able to implement the new fee schedule until at least January 1, 2001, and the proposed rule implies that the new fee schedule would not be made retroactive. *See* 65 Fed. Reg. at 55,085-86. However, Plaintiffs still did not know whether they would be harmed until the new fee schedule was actually published on February 27, 2002 because Plaintiffs did not know whether they would be entitled to higher or lower payments under the revised fee schedules. *See id.* at 55,086 ("The intent of our implementing payment under the fee schedule at only 20 percent in the first year is to give ambulance providers a period of time to adjust

---

[9]The Court finds it unnecessary to decide whether a similar analysis would apply to the BIPA claims of Coastal, ASI, or the unnamed class members in light of the Court's dismissal of those claims for lack of subject matter jurisdiction.

to the new payment amounts, because some providers may receive substantially lower payments than at present."). Plaintiffs also could not have known for certain whether the value of their claims met the regulatory amount-in-controversy requirements. *See, e.g.,* 42 C.F.R. § 405.815 (requiring that particular amounts remain in controversy during various stages of administrative review process). Although there may be no evidence of "deliberate concealment" in this case, Plaintiffs' substantial and justified uncertainty as to the existence of their claims and their standing to bring them authorizes equitable tolling.

Until February 27, 2002, Plaintiffs "ha[d] no reasonable way of discovering the wrong perpetrated against [them]." *Jackson*, 506 F.3d at 1353. Plaintiffs should not be penalized because some of their BBA claims lapsed before Plaintiffs knew they existed. Thus, the Court finds that "extraordinary circumstances" justify the equitable tolling of the applicable limitations period from January 1, 2000 through February 27, 2002.[10]

---

[10]Arguably, Plaintiffs had six months from February 27, 2002 to seek administrative relief. Plaintiffs filed *Lifestar I* on August 15, 2002, within that six-month period. Plaintiffs allege that they initiated administrative review on January 12, 2005, during the pendency of the *Lifestar I* litigation. Defendants do not dispute that the filing of the August 15, 2002 lawsuit tolled the administrative deadlines. (*See* Defs.' Mem. 23 ("[T]he filing of *Lifestar I* on August 15, 2002 tolled the time for exhaustion of administrative remedies up until February 2, 2005, the date this Court dismissed *Lifestar I*.").) Therefore, the Court makes no ruling on that issue.

CONCLUSION

For the reasons stated herein, the Court grants Defendants'
Motion to Dismiss (Doc. 5) with respect to the claims of Plaintiffs
Coastal and ASI and the claims of the unnamed class members. These
claims are dismissed without prejudice. The Court denies Defendants'
Motion to Dismiss with respect to Plaintiff Lifestar's claims.

IT IS SO ORDERED, this 5th day of March, 2008.


                                    S/Clay D. Land
                                      CLAY D. LAND
                                    UNITED STATES DISTRICT JUDGE