IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LIFESTAR AMBULANCE SERVICE,      *
INC., a Georgia Corporation,
                                 *
     Plaintiff,
                                 *
vs.                                        CASE NO. 4:07-CV-89 (CDL)
                                 *
UNITED STATES OF AMERICA;
DEPARTMENT OF HEALTH AND HUMAN   *
SERVICES; MICHAEL O. LEAVITT in
his official capacity as         *
Secretary/Director of D.H.H.S.;
HEALTH CARE FINANCING            *
ADMINISTRATION (CENTERS FOR
MEDICARE & MEDICAID SERVICES);   *
and LESLIE V. NORWALK, in her
official capacity as             *
Secretary/Administrator of
H.C.F.A./C.M.S.                  *

     Defendants.                 *

_____ *

O R D E R

     This action arises from a dispute over Defendants'
responsibility to set fee schedules specifying the Medicare
reimbursement rates for Plaintiff, a Georgia ambulance service
provider.  Plaintiff's amended complaint asserts that Defendants
failed to comply with the congressional directive requiring the
implementation of these fee schedules by certain dates.  Plaintiff
brings claims against the Department of Health and Human Services

1

("DHHS"), the Centers for Medicare and Medicaid Services ("CMS"),[1] and officials of those organizations.

Presently pending before the Court are cross-motions for summary judgment (Docs. 27 & 30).  For the following reasons, the Court denies Plaintiff's motion and grants Defendants' motion.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The parties agree that there are no disputed factual issues in this case and that summary judgment is therefore appropriate as a matter of law.  (*See* Defs.' Mem. of P. & A. in Opp'n to Pl.'s Mot. for Summ. J. 2.)

FACTUAL BACKGROUND

Plaintiff provides ambulance services to Medicare beneficiaries and is compensated in accordance with statutory directives.  In 1997, Congress enacted the Balanced Budget Act of 1997 ("BBA"), Pub. L. No. 105-33, 111 Stat. 251 (codified as amended in scattered sections of the U.S. Code), which required the Secretary of DHHS to establish a national fee schedule that would govern reimbursement rates for ambulance service providers such as Plaintiff.  BBA § 4531, 111 Stat. at 451-52.  Prior to implementation of the new fee schedule,

---

[1]This entity was formerly known as the Health Care Financing Administration ("HCFA").

ambulance service providers were paid based upon what was termed the "reasonable charge" or "reasonable cost" methodology; this methodology, however, was deemed "administratively burdensome," and it often "resulted in a wide variation of payment rates for the same service." *See* Medicare Program; Fee Schedule for Payment of Ambulance Services and Revisions to the Physician Certification Requirements for Coverage of Nonemergency Ambulance Services, 67 Fed. Reg. 9100, 9102-03 (Feb. 27, 2002) (to be codified at 42 C.F.R. pts. 410 & 414) [hereinafter, "Final Rule"].

The BBA also required the Secretary to adhere to various procedural requirements when establishing the new fee schedule. Among other things, the Secretary was directed to promulgate the regulations only after negotiated rulemaking; to establish mechanisms to control increases in expenditures; and to phase in the new fee schedules efficiently and fairly. *See* 42 U.S.C. § 1395m(*l*)(2). In addition, the BBA mandated that the implementation of the fee schedule remain "budget neutral" by requiring the Secretary to

> ensure that the aggregate amount of payments made for ambulance services under this part during 2000 does not exceed the aggregate amount of payments which would have been made under such services under this part during such year if the amendments made by section 4531 of the Balanced Budget Act of 1997 continued in effect [after being adjusted for inflation].

*Id.* § 1395m(*l*)(3). Finally, the BBA expressly required DHHS to apply the revised fee schedules to services furnished on or after January 1, 2000. Pub. L. No. 105-33, § 4531 (b)(3) ("The amendments made by

3

this subsection shall apply to services furnished on or after January 1, 2000.").

During the time the new fee schedule was supposed to be established, DHHS was focused on updating its computer systems to ensure Y2K compliance. Much of DHHS's concern centered on the existing Medicare computer system, which processed an enormous volume of claims on a daily basis. In addition to completing the work required to ensure the Medicare computer system was Y2K compliant, the Centers for Medicare and Medicaid Services ("CMS") were also charged with making major computer programming changes necessary to implement the BBA directives. These issues combined to create a backlog of work at CMS. As a result of this backlog, the CMS administrator informed a Senate Committee that the implementation of certain BBA provisions would be delayed due to the "complex systems changes and interactions with other systems that would interfere with critical Year 2000 work." *The Year 2000 Computer Problem: Will the Health Care Industry Be Ready?: Hearing Before the S. Special Committee on the Year 2000 Technology Problem*, 105th Cong. 65 (1998) (statement of Nancy-Ann Min DeParle, CMS Administrator). On April 1, 2002, DHHS ultimately adopted the national fee schedule pursuant to the BBA. However, the April 1, 2002 fee schedule was not applied to services rendered on or after January 1, 2000, the statutory effective date. Instead, the schedule purports to be effective only

4

for services furnished on or after April 1, 2002.  *See* Final Rule, 67 Fed. Reg. at 9100.

Plaintiff previously submitted claims for payment of services provided to Medicare patients from January 1, 2000 to March 31, 2002; Defendants determined these claims were proper but paid the claims under the "reasonable charge" methodology at rates established prior to the implementation of the April 1, 2002 fee schedule.  Plaintiff has not been paid in accordance with the fee schedule mandated by BBA for ambulance services provided between January 1, 2000 and March 31, 2002.  Plaintiff thus "asks the Court to rule that [Plaintiff] is entitled to payment in accordance with the Fee Schedule adopted by DHHS pursuant to the BBA of 1997, for all Medicare eligible ambulance services they furnished on or after January 1, 2000." (Pl.'s Mem. Supp. Mot. for Summ. J. 3.)  For the following reasons, the Court finds Plaintiff is not entitled to this relief.

DISCUSSION

Plaintiff seeks a ruling that it is entitled to be compensated pursuant to a fee schedule for the services it rendered from January 1, 2000 through March 31, 2002.  If the Court finds the Plaintiff is entitled to such a ruling, the Court would also be compelled to "order Defendants to perform their duties pursuant to federal law and the findings of this Court, including a writ of mandamus or injunction," (Am. Compl. 17), because no fee schedule currently

exists for the relevant time period.[2]  Because Plaintiff's claims arise in the context of an administrative appeal, the Court will first discuss the applicable standard of review and the final and appealable decision of the Secretary.  The Court will then examine the merits of Plaintiff's claim and Defendants' opposition thereto.

## I.    Standard of Review

Plaintiff's claims arise under the Medicare Act, 42 U.S.C. § 1395 *et seq*.  *See Lifestar II*, 365 F.3d at 1295 n.3.  "The Medicare Act establishes a comprehensive remedial scheme, providing both administrative hearing rights for aggrieved providers, such as plaintiffs, and judicial review of the Secretary's final decisions."  *Id.* at 1295.  Once an aggrieved party has exhausted its administrative remedies and obtained a final decision from the Secretary, a federal district court has the authority to review the decision and "enter, upon the pleadings and transcript of the record,

---

[2]The Court notes that although Plaintiff continues to seek mandamus relief, the Eleventh Circuit's decision in *Lifestar Ambulance Service, Inc. v. United States*, 365 F.3d 1293 (11th Cir. 2004) [hereinafter *Lifestar II*], requires Plaintiff to bring its claim as an administrative appeal rather than as an original action arising under the Mandamus Act, 28 U.S.C. § 1361.  *See Lifestar II*, 365 F.3d at 1295 ("The Supreme Court has made clear that '[o]rdinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed.'").  Although various issues that the Court mentioned in *Lifestar Ambulance Service, Inc. v. United States*, 211 F.R.D. 688 (M.D. Ga. 2003) [hereinafter *Lifestar I*], *rev'd by Lifestar II*, 365 F.3d 1293, are again raised by the parties in this litigation, the procedural postures of the two cases are entirely different.  Because *Lifestar II* required Plaintiff to channel its claims through the administrative process, the Court must now analyze the issues raised by the parties in light of the standards governing administrative appeals rather than those governing mandamus jurisdiction.

a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing" in accordance with statutory procedure. *See* 42 U.S.C. § 405(g).[3] While factual findings of the Secretary are conclusive if supported by substantial evidence, *see id.*, the Court has plenary judicial review over the Secretary's final decision and is "fully empower[ed] . . . to consider and remedy any of the violations of law alleged by [P]laintiff here." *Lifestar II*, 365 F.3d at 1298; *see also Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam) ("Despite this deferential standard, it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached.  No presumption of validity attaches to the Secretary's determination of the proper legal standards to be applied in evaluating claims." (citation omitted)).

The Medicare Appeals Council ("MAC") framed the question in this case as "whether the Medicare program is required to retroactively adjust payments for ambulance service claims that were initially paid during the period January 1, 2000 through March 31, 2002, prior to

---

[3]The Medicare statute incorporates § 405(g) into its remedial scheme, providing that

> any individual dissatisfied with any initial determination . . . . shall be entitled to reconsideration of the determination, and . . . a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and . . . to judicial review of the Secretary's final decision . . . as is provided in section 405(g) of this title.

42 U.S.C. § 1395ff(b)(1)(A).

the April 1, 2002 effective date of the ambulance fee schedule final rule." (Ex. 4 to Defs.' Mem. Supp. Mot. to Dismiss 4.)  During the administrative appeal, an administrative law judge ("ALJ") determined that "[t]o the extent [Plaintiff] claims it received improper payment from Medicare for the services rendered . . . [Plaintiff] was properly paid by Medicare, according to the ["reasonable charge"] methodology in place by regulation[.]" (Ex. 1 to Defs.' Mem. Supp. Mot. to Dismiss 7.)  The ALJ also concluded that to the extent Plaintiff sought payment under the fee schedule methodology, he lacked "jurisdictional authority . . . to issue a decision mandating implementation of, or payment based upon, an ambulance fee schedule in contravention of the applicable federal regulations." (*Id.* at 7-8.)  The MAC declined Plaintiff's request for further review of the ALJ's decision, agreeing that "the ALJ and the Council are required to apply the ambulance services fee schedule in a manner consistent with the effective date of the final rule." (Ex. 4 to Defs.' Mem. Supp. Mot. to Dismiss 5.)  The MAC therefore determined that the ALJ's decision would stand as the final and appealable decision of the Secretary. (*Id.*)

## II.  *Chevron* Analysis of Defendants' Interpretation of the BBA

Plaintiff contests the Secretary's conclusion that Plaintiff was properly paid under the "reasonable charge" methodology and instead seeks a ruling that "it is entitled to payment in accordance with the Fee Schedule adopted by DHHS pursuant to the BBA of 1997, for all Medicare eligible ambulance services they furnished on or after

January 1, 2000." (Pl.'s Mem. Supp. Mot. Summ. J. 3.) The crux of Plaintiff's claim is "that it was paid less than what it should have been paid by Medicare for ambulance services provided between January 1, 2000 and March 31, 2002" and that "the methodology in place [at that time] was incorrect and that the DHHS was obligated to implement and provide payment under a fee schedule methodology[.]" (Ex. 1 to Defs.' Mot. to Dismiss 7.) Resolution of this issue therefore turns on the validity of the Secretary's construction of the BBA.

When reviewing an agency's construction of a statute it administers, the Court is confronted with two now-familiar questions:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (footnotes omitted). Accordingly, the Court will first examine whether Congress has directly spoken to the precise question at issue in this case.

A.   Ambiguity of Statutory Provision at Issue

"Under the first level of *Chevron* analysis, we employ the 'traditional tools of statutory construction' to determine Congressional intent." *Miami-Dade County v. EPA*, 529 F.3d 1049, 1063 (11th Cir. 2008) (per curiam).  A cardinal principle of statutory construction requires the Court to read "the statute using the normal meanings of its words," and "[a]bsent a clearly expressed legislative intent to the contrary, that language is generally dispositive." *Horton Homes, Inc. v. United States*, 357 F.3d 1209, 1211 (11th Cir. 2004) (internal quotation marks omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1333 (11th Cir. 2002) (per curiam) ("If the will of Congress is clear from the statute itself, our inquiry ends . . . ." (internal quotation marks omitted)).  Thus, when the text of the statute is clear, the Court need look no further; "'[n]o deference is to be given to an agency interpretation that is at odds with the plain meaning of the statute being interpreted.'"  *Friedman v. Market Street Mortgage Corp.*, 520 F.3d 1289, 1297 (11th Cir. 2008) (quoting *Heimmermann v. First Union Mortgage Corp.*, 305 F.3d 1257, 1261 (11th Cir. 2002)).

It is an equally well-established "canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks omitted); *see also Regions Hosp. v.*

*Shalala*, 522 U.S. 448, 460 n.5 (1998) (noting that a court "must not be guided by a single sentence or member of a sentence, but [it must] look to the provisions of the whole law, and to its object and policy" ). As the Eleventh Circuit has observed, courts "do not read words or strings of them in isolation. . . . [They] try to make them and their near and far kin make sense together, have them singing on the same note, as harmoniously as possible." *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1268 (11th Cir. 2006). This principle of statutory construction is necessary because "[t]he meaning–or ambiguity–of certain words or phrases may only become evident when placed in context." *Brown & Williamson*, 529 U.S. at 132. Here, Plaintiff contends that the intent of Congress is clear with respect to the date the fee schedule "shall apply." *See* Pub. L. No. 105-33, § 4531 (b)(3) (requiring that the BBA's amendments to the Medicare statute, including the new fee schedule, "shall apply to services furnished on or after January 1, 2000"). The Court finds, however, that an examination of the provisions of the entire law and its object and policy reveals that the BBA is ambiguous on this point.

The "precise question at issue" in this case is whether Plaintiff is entitled to be compensated in accordance with the fee schedule methodology. (Pl.'s Mem. Supp. Mot. Summ. J. 3.) Underlying this issue is the question of Defendants' duty: the Court must examine whether the BBA required Defendants either to (1) promulgate fee schedule regulations by January 1, 2000, the statutory

11

effective date, or (2) retroactively apply the fee schedule regulations back to the statutory effective date. The Court finds the BBA does not speak directly to either of these issues.

First, the BBA is ambiguous with respect to whether Defendants were required to promulgate the fee schedule regulations by the statutory effective date. It is reasonable to presume, as Plaintiff seems to do, that the statutory effective date implicitly required Defendants to promulgate the regulations by January 1, 2000. However, in the absence of a specific Congressional mandate requiring Defendants to promulgate regulations by a date certain, it is equally reasonable to presume that Congress did not intend to compel Defendants to act within a prescribed time limit. Congress has demonstrated that it understands how to exert this authority in other contexts. *Cf., e.g.,* Nutrition Labeling and Education Act of 1990 § 2(b)(1)-(2), Pub. L. No. 101-535, 104 Stat. 2353, 2357 (codified as amended in scattered sections of 21 U.S.C.) (requiring agency to promulgate proposed regulations within 12 months of the date of the statute's enactment; if final regulations had not been proposed within 24 months of the date of enactment, the proposed regulations would "be considered as the final regulations"). Because the relevant statutory phrase is susceptible of two different, but reasonable, interpretations, the phrase is ambiguous. *See, e.g., Wachovia*, 455 F.3d at 1268 (finding a statutory term ambiguous because "it plausibly could mean either of two things").

12

Additionally, the BBA does not speak directly to whether the fee schedule regulations must apply retroactively to services provided after January 1, 2000 but before the fee schedule regulations were promulgated. The only potential evidence that Congress required the fee schedule to have retroactive effect is the statutory effective date.[4] Courts have held, however, that a statutory effective date standing alone is insufficient evidence that Congress intended retroactive application of a regulation. *See, e.g., Sweet v. Sheahan*, 235 F.3d 80, 89 (2d Cir. 2000) (effective date in a statute that required the implementation of regulations did not mandate retroactivity since "[n]o express language in the [statute] requires that the regulations be applied retroactively"). The Medicare statute itself also establishes a general presumption against the retroactive application of its regulations. *See* 42 U.S.C. § 1395hh(e)(1)(A).[5]

---

[4]Although the BBA stated that its amendments to the Medicare statute "shall apply" as of January 1, 2000, courts have also held that "use of the word 'shall' does not necessarily signify that Congress intended the deadlines to be mandatory." *Friends of the Aquifer, Inc. v. Mineta*, 150 F. Supp. 2d 1297, 1300 (N.D. Fla. 2001), *aff'd.*, 31 F. App'x 202 (11th Cir. 2001). In *Friends of the Aquifer*, the court noted that, in the context of determining whether an agency loses jurisdiction over an issue as a consequence of missing a statutory deadline, "courts have universally decided that, absent a clear indication that Congress intended otherwise, a statutory deadline should be deemed to be directory, not mandatory." 150 F. Supp. 2d at 1301.

[5]42 U.S.C. § 1395hh(e)(1)(A) provides:

A substantive change in regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability under this subchapter shall not be applied (by extrapolation or otherwise) retroactively to items and services furnished before the effective date of the change,

Furthermore, the Secretary's unreviewable discretion to phase in application of the payment rates in a fair and efficient manner undermines Plaintiff's conclusion that it was entitled to be compensated in accordance with the fee schedule methodology as of January 1, 2000.  *See* 42 U.S.C. § 1395m(*l*)(2)(E).  This grant of authority suggests that Congress contemplated the possibility that some ambulance services would continue to be compensated in accordance with the "reasonable charge" methodology for some period of time after January 1, 2000.  Indeed, the Court sees no reason why Defendants could not have done expressly what they did implicitly in this case: exercise their discretion to phase in the fee schedule by establishing that during the first stage of the fee schedule phase-in, payments would continue to be calculated under the "reasonable charge" methodology.

Resorting to legislative history does not clarify these ambiguities.  Plaintiff has failed to direct the Court to legislative history that bolsters its construction of the statute.  Defendants argue that Congress's apparent lack of concern over the late implementation of the fee schedules supports its construction of the BBA.  It is true that Congress acknowledged the lateness of the fee schedule.  *See* H.R. Rep. No. 106-1019(I), at 47 (2000) ("BBA '97 provided for the implementation of a fee schedule, effective January

_____

unless the Secretary determines that (i) such retroactive application is necessary to comply with statutory requirements; or (ii) failure to apply the change retroactively would be contrary to the public interest.

14

1, 2000. . . .  Implementation of the fee schedule has been delayed until at least January 1, 2001.")  Congress also introduced bills amending the BBA without inserting any additional provisions altering the effective date of the fee schedule.  *See, e.g.,* Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000, ("BIPA"), Pub. L. No. 106-554, 114 Stat. 2763, 2763A-463 to -586 (codified as amended in scattered sections of 42 U.S.C.).  Defendant argues that Congress's inaction signals its approval of the Secretary's determination that the regulations did not have to be promulgated by January 1, 2000 or applied retroactively once promulgated.  *See, e.g., United States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979) ("[O]nce an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." (internal quotation marks omitted)).  Defendants further argue that Congress's choice to entitle the relevant portion of the BBA "Establishment of Prospective Fee Schedule" is an indication that Congress did not require retroactive application of the fee schedule.  *See* Pub. L. 105-33, § 4531(b).

This evidence does not conclusively elucidate the aforementioned ambiguities.  *See United States v. Castro*, 837 F.2d 441, 442 & n.1 (11th Cir. 1988) (noting that titles and section headings have only

limited use as interpretive aids); *Winter v. Hollingsworth Props., Inc.*, 777 F.2d 1444, 1449 n.12 (11th Cir. 1985) ("Courts ordinarily do not attach much significance to Congress' acquiescence in an agency's interpretation of a statute because '[n]on-action by Congress is not often a useful guide.'" (quoting *Bob Jones Univ. v. United States*, 461 U.S. 574, 600 (1983)). The Court therefore concludes that Congress did not unambiguously require Defendants to promulgate the fee schedule regulations by January 1, 2000, nor did Congress speak directly to the issue of whether the fee schedule regulations must be applied retroactively to services furnished between January 1, 2000 and March 31, 2002. The Court therefore turns to whether Defendants' construction of the statute is reasonable.[6]

> B.   Reasonableness of Defendants' Construction

The second prong of *Chevron* analysis requires the Court to examine whether the agency's interpretation is based on a permissible construction of the statute.[7] *Miami-Dade County*, 529 F.3d at 1062;

---

[6]The Court acknowledges that its conclusion today as to the ambiguity of the BBA is inconsistent with the Court's ruling in *Lifestar I*; but nothing sharpens the mind of a district judge quite like a reversal by the Court of Appeals. Although the Eleventh Circuit's reversal of *Lifestar I* was restricted to whether this Court had jurisdiction over a mandamus action when Plaintiff had not yet exhausted his administrative remedies, the Eleventh Circuit's gratuitous dicta impliedly questioning how payments could be made retroactively without contravening the statute's "budget neutrality" requirement caused the Court to reconsider its previous analysis. Upon reconsideration, the Court, as explained in today's Order, finds that the statute is more ambiguous than the Court originally recognized in *Lifestar I*.

[7]An agency's interpretation of an ambiguous statutory provision is entitled to *Chevron* deference only when Congress delegates the agency with

16

*see also Chevron*, 467 U.S. at 844 (holding that when "the legislative delegation to an agency on a particular question is implicit rather then explicit . . . a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency").  Thus, a reviewing court must defer to the agency "so long as the [agency's] interpretation represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute, . . . unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Jaramillo v. INS*, 1 F.3d 1149, 1154 (11th Cir. 1993) (en banc) (internal quotation marks omitted) (second alteration in original).  The BBA provided a list of items that the Secretary was required to consider in establishing the fee schedule.  *See* 42 U.S.C. § 1395m(*l*)(2).  In addition, Defendants were required to establish the fee schedule by way of negotiated rulemaking, ensure budget neutrality, and consult with national organizations representing various ambulance industry service providers.  *See id.* §§ 1395m(*l*)(1), (3), (4).  Defendants' ultimate construction of the BBA was an effort to reconcile these considerations in the manner that would best effectuate Congressional

---

the authority to make interpretations carrying the force of law.  *See Chevron*, 467 U.S. at 843-44.  This prerequisite is satisfied in this case.  Congress vested Defendants with the authority to "prescribe such regulations as may be necessary to carry out the administration" of the Medicare system, 42 U.S.C. § 1395hh(a)(1), and also vested Defendants with the authority to  create the fee schedules at issue in this litigation, 42 U.S.C. § 1395m(*l*)(1) ("The Secretary shall establish a fee schedule for payment for ambulance services . . . .").

intent.    Accordingly,  the  Court  concludes  that  Defendants'
construction of the BBA was reasonable.[8]

First,  Defendants'  construction  of  the  BBA  permitted  it  to
comply with the BBA's statutory mandate requiring budget neutrality.
The BBA's amendments to the Medicare statute were designed to curb
Medicare  spending  by  "slowing  the  rate  of  payment  growth  to
hospitals,  physicians,  and  other  providers  and  by  establishing  new
prospective  payment  systems  (PPS)  for  the  reimbursement  of  skilled
nursing  facilities,  hospital  outpatient  departments,  home  health
agencies,  and  other  providers."    H.R. Rep. No. 106-436(I), at 34
(1999).  To ensure that the new fee schedule would further Congress's
goal of reducing Medicare expenditures, the BBA incorporated a budget
neutrality requirement into the promulgation of the fee schedule.  42
U.S.C. § 1395m(*l*)(3).  In this case, it appears that the only way for
Defendants  to  achieve  the  promulgation  of  the  fee  schedule  in  a

---

[8]It  is  also  worth  noting  that  Defendants  convened  a  negotiated
rulemaking committee to help formulate the fee schedules.  Although these
committee members were aware that the fee schedule regulations would not
be promulgated by January 1, 2000, no member of the committee suggested
retroactive application of the regulations.  (*See* Lyons Decl. ¶ 4, Aug.
6,  2008.)    Furthermore,  when  Defendants  opened  the  Proposed  Rule  for
comment,  no  commenter  suggested  that  the  fee  schedules  should  have  been
retroactively  applied  or  that  the  Secretary  should  develop  a  fee  schedule
to  cover  services  rendered  between  January  1,  2000  and  March  31,  2002.
(*Id*. ¶¶ 3, 4.)  Portions of the Final Rule were also open for comment, but
again, Defendants received no comments suggesting retroactive application
of the fee schedule regulations.  (*Id*.)
      Defendants  did  consider  the  comments  it  received  during  the
rulemaking  proceedings  and  adjust  the  Proposed  Rule  accordingly.    For
example,  after  an  analysis  of  the  comments  revealed  the  suggestion  that
Defendants implement an even longer phase-in period than that found in the
Proposed Rule, Defendants adjusted the phase-in period from four years to
five years when it published the Final Rule.  *See* Final Rule, 67 Fed. Reg.
at 9119-20.

budget neutral manner was to apply the regulations prospectively. *See Lifestar II*, 365 F.3d at 1294 n.1 ("Because we do not reach the merits of this case, we do not consider how the federal defendants might be ordered to comply with a statutory mandate (budget neutrality) now impossible to meet."). However, even if temporarily continuing to calculate payments pursuant to the "reasonable charge" methodology was not the only way to preserve budget neutrality, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11; *accord Jaramillo*, 1 F.3d at 1152 ("Under *Chevron* a court is not to search for what in the court's view is the best possible construction of the statute . . . ."). The Court must simply conclude, as it does here, that the agency's construction was based on a permissible construction of the statute. *Chevron*, 467 U.S. at 843-44.

Defendants' construction of the statute also comports with the general presumption against retroactive application of regulations. In order to grant Plaintiff the relief it seeks, the Court would be required to order Defendants to promulgate a fee schedule that would have retroactive effect.[9]  Courts are generally "prohibited from

_____

[9]Of course, "[a] statute or administrative regulation does not operate retroactively merely because it applies to prior conduct[.]" *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1252 (11th Cir. 2008) (internal quotation marks omitted).  Instead, "a statute or regulation has

19

applying a regulation to conduct that took place before its enactment in the absence of clear congressional intent where the regulation would 'impose new duties with respect to transactions already completed.'" *Sweet*, 235 F.3d at 89. As previously mentioned, the only potential evidence that Congress required the fee schedule to have retroactive effect is the statutory effective date; this date, standing alone, is insufficient to overcome the general presumption against retroactive application of regulations. *See, e.g., id.*

Furthermore, Defendants' determination that the BBA does not require retroactive payments also permitted it to conform with another of its statutory mandates: the duty to phase in application of the payment rates in a fair and efficient manner. *See* 42 U.S.C. § 1395m(*l*)(2); *see also* Medicare Program; Withdrawal of Ambulance Fee Schedule Issued in Accordance with Federal District Court Order in Lifestar Ambulance Inc. v. United States, No. 4:02-CV-127-1 (M.D. Ga., Jan. 16, 2003)– Medicare Covered Ambulance Services, 70 Fed. Reg. 52105-03, 52107 (Sept. 1, 2005) (noting that because compliance with the budget neutrality provision would require recoupment from some suppliers, "[a]pplying the [fee schedule] retroactively to the providers and suppliers would arguably not constitute a fair phase-in of the [fee schedule] provisions").

---

retroactive effect if [it] would impair rights a party possessed when he acted, increase [his] liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* (internal quotation marks omitted) (second alteration in original). Any proposed fee schedule that imposes a duty upon Defendants to recalculate payments in accordance with a new methodology would thus have retroactive effect.

20

In sum, the Court concludes that Defendants' construction of the BBA "represents a reasonable accommodation of manifestly competing interests and is entitled to deference: the regulatory scheme is technical and complex, the agency considered the matter in a detailed and reasoned fashion, and the decision involves reconciling conflicting policies." *Chevron*, 467 U.S. at 865 (footnotes omitted); *see also id.* at 844 (noting that considerable deference is accorded to an agency "whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations" (internal quotation marks omitted)). Defendants' determination that the BBA did not obligate them to promulgate regulations by the statutory effective date or retroactively compensate Plaintiff in accordance with the fee schedule for the relevant time period "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute." *Id.* at 845 (internal quotation marks omitted). Plaintiff has directed the Court to no other statutory provision or piece of legislative history that supports the conclusion that Congress would not have approved of Defendants' construction of the statute; accordingly, the Court declines to disturb it. *See id.* The ALJ's determination that Plaintiff was appropriately compensated under the "reasonable charge" methodology for those services must therefore be affirmed.

CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion for Summary Judgment (Doc. 27) and grants Defendants' Motion for Summary Judgment (Doc. 30).

IT IS SO ORDERED, this 30th day of March, 2009.


S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE